IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMUEL MYCHAK, et al., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | No.: 09-2194 |
| | : | |
| MARLA WELKER, | : | |
| Defendant. | : | |

**M E M O R A N D U M**

**SITARSKI, M.J.**                                                                                                           May 10, 2010

Currently pending before the Court is a motion for summary judgment filed by Defendant Marla Welker, Esquire. For the following reasons, the motion will be DENIED.

**I.    INTRODUCTION**

Samuel Mychak and Samuel Mychak, P.C., ("Plaintiffs") initiated this lawsuit against a former employee, Marla Welker, Esquire ("Defendant"), in the Court of Common Pleas in Philadelphia County by filing a Complaint on April 15, 2009. Defendant filed a Notice of Removal on May 18, 2009. Plaintiffs allege wrongful use of civil proceedings in violation of the Dragonetti Act, 42 Pa.C.S.A. § 8351, *et seq*.[1]

This matter initially was assigned to District Court Judge Juan R. Sanchez. On August 18, 2009, the parties consented to the exercise of jurisdiction by a United States Magistrate Judge under 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, and the matter was referred to me. (Doc. No.

---

[1] Plaintiffs' Complaint also sets forth a cause of action for abuse of process; however, Plaintiffs stated their intent to withdraw that cause of action as "redundant" with the Dragonetti claims. *See* Plaintiffs' Memo. in Opp. at 19.

1

17). Thereafter, on April 9, 2010, following the completion of discovery, Defendant filed the instant Motion for Summary Judgment. (Doc. No. 38).

Defendant moves for summary judgment on the grounds that Plaintiffs' claims are barred by the applicable statutes of limitations, and on the grounds that Plaintiffs cannot establish the necessary elements for abuse of process or wrongful use of civil proceedings. *See* Def.'s Mot. for Sum. J. at vii. On April 26, 2010, Plaintiffs filed their Answer to Defendant's Motion. (Doc. No. 60). On April 30, 2010, Defendants filed a Reply Brief. (Doc. No.77). Accordingly, this matter is now ripe for disposition.

## II. BACKGROUND

Plaintiff Samuel Mychak, an individual, was engaged in the practice of law until his retirement on August 31, 2003. Complaint ¶ 1. Prior to his retirement, Mr. Mychak was the sole shareholder of Plaintiff Samuel Mychak, P.C. ("the Firm"), a Pennsylvania professional corporation. Complaint ¶¶ 2, 5; Def.'s Mot. for Sum. J., Ex. D-29. The Firm was engaged in the practice of law under various designations, including the trade names of "Mychak, Geckle & Welker" and "Mychak, Geckle & Welker, P.C." Complaint ¶ 6; Def.'s Mot. for Sum. J., Ex. D-29. The Firm handled personal injury matters, including medical malpractice. Def.'s Mot. for Sum. J., Ex. D-8. From January 2003 through August 2003, Mr. Mychak entered into negotiations with Patrick G. Geckle, a former associate with the Firm, and Defendant Marla Welker regarding acquiring certain assets from Mr. Mychak and/or the Firm. Def.'s Mot. for Sum. J., Ex. D-29. At the end of August 2003, Mr. Mychak sold most of the assets of the Firm to Mr. Geckle, and the Firm ceased operations. Def.'s Mot. for Sum. J., Ex. D-29.

Ms. Welker, a member of the Bar of the Commonwealth of Pennsylvania, was hired by the Firm as a full time personal injury attorney beginning in 1984. Def.'s Mot. for Sum. J., Ex. D-29. Ms. Welker continued her employment with the Firm until on or about August 30, 2003, at which time the Firm ceased operations. Ms. Welker was terminated along with all of the employees of the Firm. Def.'s Mot. for Sum. J., Ex. D-29; Pltfs' Memo in Opp. at 3.

During its operation, the Firm had referred a number of significant medical malpractice matters to the law firm of Perry, Fialkowski & Perry ("Perry's"). Def.'s Mot. for Sum. J., Ex. D-24. At least eight matters referred to the Perry's achieved favorable settlements in June through August 2003, with final distribution of funds to occur in January 2004. Def.'s Mot. for Sum. J., Ex. D-24, D-29. The parties in the instant case understood that the Perry's owed the Firm referral fees in excess of 2.4 million dollars as of August 2003. Def.'s Mot. for Sum. J., Ex. D-24, D-29. On September 3, 2003, Ms. Welker informed the Perry's that she was a former partner of the Firm and had an interest in the referral fees. Def.'s Mot. for Sum. J., Ex. D-29. As a result, the Perry's declined to distribute the referrals fees, and the referral fees, which were placed in escrow, ultimately became the subject of a lawsuit filed in the Court of Common Pleas of Philadelphia County, *Mychak, P.C. v. Perry*. Def.'s Mot. for Sum. J., Ex. D-24.

On September 26, 2003, Ms. Welker filed suit ("underlying litigation") against the Firm, Samuel Mychak, Patrick G. Geckle, and Mychak & Geckle, LLC, the trade name of an entity formed by Mr. Geckle on or about August 29, 2003. Pltfs' Memo in Opp., Exs. 1 & 9. Ms. Welker's complaint alleged fifteen (15) causes of action related to her alleged forced departure from the Firm. Pltfs' Memo in Opp., Ex. 1. Ms. Welker sought damages for outstanding wages and the equitable division of past, present and future legal fees, as well as injunctive relief to

3

reclaim her clients' files and to end the alleged misappropriation of her name. Pltfs' Memo in Opp., Ex. 1. Ms. Welker's complaint asserted that while she was an *employee* of the Firm, she and Messrs. Mychak and Geckle had an oral agreement to hold themselves out as *partners*. Pltfs' Memo in Opp., Ex. 1, ¶¶ 5, 11. Ms. Welker further asserted that she assumed the responsibilities of a partner and was publically touted as a partner of the Firm. Pltfs' Memo in Opp., Ex. 1, ¶¶ 11-13.

The underlying litigation continued for several years, with numerous discovery disputes and motions. Pltfs' Memo in Opp., Ex. 4. In September 2003, Ms. Welker filed a petition for a preliminary injunction seeking an order requiring Mr. Geckle's new firm Mychak, Geckle P.C., to provide Ms. Welker communication with her clients and access to her files, which the parties ultimately worked out. Def.'s Mot. for Sum. J., Ex. D-12, D-13. On November 22, 2004, the Honorable Gene D. Cohen granted partial summary judgment in favor of the Firm and against Ms. Welker, and Judge Cohen determined as a matter of law that Ms. Welker was an employee and not a partner of the Firm. Pltfs' Memo in Opp., Ex. 4; Def.'s Mot. for Sum. J., Ex. D-16. Ms. Welker's claims for breach of contract, violations of Pennsylvania Wage Payment and Collection Law ("WPCL"), fraudulent misrepresentation, and negligent misrepresentation, as well as the defendants' counterclaims remained viable claims in the underlying litigation. Pltfs' Memo in Opp., Ex. 4; Def.'s Mot. for Sum. J., Ex. D-16. On December 30, 2004, the Perry's filed a motion to intervene, which the Honorable Howland Abramson granted for the purpose of interpleading funds in the underlying litigation. Pltfs' Memo in Opp., Ex. 4. On March 16, 2005, the Perry's filed an emergency petition for interpleader, and on March 28, 2005, Judge Abramson ordered that the related action, *Mychak, P.C. v. Perry*, be consolidated with the

underlying litigation. Pltfs' Memo in Opp., Ex. 4. The Perrys' emergency petition for interpleader was subsequently denied as moot. Pltfs' Memo in Opp., Ex. 4.

The matter was ultimately tried before Judge Abramson in December 2005. Pltfs' Memo in Opp., Ex. 4. At the time of trial, the underlying litigation involved at least three sets of claims: (1) the claims involving Ms. Welker, Mr. Mychak, and the Firm, (2) Mr. Geckle's counterclaims against Ms. Welker, and (3) the claims involving the Perry's and the Firm. Def.'s Mot. for Sum. J., Ex. D-29. During the course of trial, the parties reached agreements regarding some of the issues between the parties. For example, the parties amicably resolved the issue of a check that Ms. Welker misplaced. Pltfs' Memo in Opp. at 13. The check covered $20,000.00 of compensation owed to Ms. Welker that had been withheld by agreement of the parties during the negotiations for the Firm's assets. Pltfs' Memo in Opp. at 13, Exs. 21, 22. At the close of trial, Ms. Welker requested that the missing check be replaced, which Mr. Mychak agreed to do. Pltfs' Memo in Opp. at 14.

Prior to the close of trial, Judge Abramson entered nonsuit as to Ms. Welker's claims against the Firm for negligent misrepresentation and fraud. Def.'s Mot. for Sum. J., Ex. D-29. On September 14, 2006,[2] Judge Abramson issued Findings of Facts and Conclusions of Law.[3]

---

[2] Judge Abramson's Findings were dated September 12, 2006; however, the Findings were docketed on September 14, 2006. Pltfs' Memo in Opp., Ex. 4.

[3] Judge Abramson found in favor of the Firm and against Ms. Welker on the claims for breach of contract, violation of WPCL, and tortious interference with contract. Judge Abramson also found in favor of the Firm and against Ms. Welker for declaratory judgment, including a declaration that Ms. Welker was an employee of the Firm and was not entitled to referral fees. Judge Abramson found in favor of Ms. Welker on Mr. Geckle's counterclaims for tortious interference with prospective contractual relations. Lastly, Judge Abramson found in favor of the Perry's and against the Firm with respect to the claims for breach of contract and conversion. Def.'s Mot. for Sum. J., Ex. D-29.

Def.'s Mot. for Sum. J., Ex. D-29. In addition to issuing his Findings of Fact and Conclusions of Law, Judge Abramson ordered that the Firm and the Perry's submit additional briefs on issues pertaining to attorney's fees and costs. Pltfs' Memo in Opp., Ex. 4. Motions for post-trial relief and motions pertaining to attorneys fees and the escrow funds were decided in late 2006 and early 2007. Pltfs' Memo in Opp., Ex. 4. Finally, on April 23, 2007,[4] Judge Abramson entered judgment consistent with the Findings of Fact and Conclusions of Law.[5] Pltfs' Memo in Opp., Ex. 5. On May 18, 2007, the court docketed the Firm's notice of appeal. Pltfs' Memo in Opp., Ex. 4. On May 18, 2007, Judge Abramson additionally entered judgment in favor of Mr. Mychak and against Ms. Welker on the claim for violation of WPCL, which was also consistent with his Findings of Fact and Conclusions of Law.[6] Pltfs' Memo in Opp., Ex. 4.

The Firm's appeal only pertained to claims involving the Perry's and the Firm. Def.'s Mot. for Sum. J., Ex. D-31. On appeal, the Superior Court affirmed Judge Abramson's April 23, 2007, order requiring the Firm to pay attorney's fees and costs to the Perry's. Def.'s Mot. for Sum. J., Ex. D-31.

---

[4] Judge Abramson's order is dated April 20, 2007; however, the order was docketed on April 23, 2007. Pltfs' Memo in Opp., Exs. 4, 5.

[5] Judge Abramson entered judgment in favor of the Firm and against Ms. Welker on the claims for breach of contract, violation of WPCL, and tortious interference with contract. Judge Abramson entered judgment in favor of the Firm and against Ms. Welker for declaratory judgment, including a declaration that Ms. Welker was an employee of the Firm and was not entitled to referral fees. Judge Abramson entered judgment in favor of Ms. Welker on Mr. Geckle's counterclaims for tortious interference with prospective contractual relations. Lastly, Judge Abramson entered judgment in favor of the Perrys and against the Firm with respect to the claims for breach of contract and conversion. Pltfs' Memo in Opp., Ex. 5.

[6] As an apparent oversight, Ms. Welker's WPCL claim against Mr. Mychak was not included in the April 23, 2007, entry of judgment. The wording of the Findings may have led to this oversight, since the specific claim against Mr. Mychak was not included in the enumerated Findings. Def.'s Mot. for Sum. J., Ex. D-29; Pltfs' Memo in Opp., Ex. 4.

## III. STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if there is sufficient evidence from which a jury could find in favor of the non-moving party. *Id.* at 248-29. It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) *(citing U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the moving party carries this initial burden, the non-moving party must "come forward with specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. The non-moving party must present something more than mere allegations, general denials, vague statements, or suspicions. *Trap Rock Indus. v. Local* 825, 982 F.2d 884, 890 (3d Cir. 1992); *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Instead, the non-

moving party must present specific facts and "affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50. If the non-moving party has the burden of proof at trial, then that party must establish the existence of each element on which it bears the burden. *Celotex Corp.*, 477 U.S. at 322-23.

## IV. DISCUSSION

### A. Plaintiffs' Claims for Wrongful Use of Civil Proceedings ("Dragonetti Claims") Are Not Barred by the Statute of Limitations.

Defendant argues that Plaintiffs' wrongful use of civil proceedings claims are barred by the applicable statute of limitation. *See* Defendant's Mot. for Sum. J. at 18-19. The parties agree that this cause of action is subject to a two year statute of limitation. 42 Pa.C.S.A. § 5524(1). A cause of action for wrongful use of civil proceedings requires, among other things, proof that the underlying proceedings terminated in favor of the plaintiff.[7] Thus, a cause of action for wrongful use of civil proceedings "does not accrue until the allegedly wrongful suit

---

[7] The elements of a cause of action pursuant to the Dragonetti Act are as follows:

A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

(1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

(2) The proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S.A. § 8351(a).

against the plaintiff is terminated in his favor." *Consulting Engineers, Inc. v. Insurance Co. of North America*, 710 A.2d 82, 86 (Pa.Super. 1998)(citing *Ludmer v. Nernberg*, 520 Pa. 218, 222 (1989)). The date of termination of the proceedings is central to the statute of limitations analysis. At that time, the applicable two year statute of limitation begins to run. *Id.*

According to Defendant, Plaintiffs' claims accrued on October 12, 2006, when the period of appeal expired relative to Judge Abramson's September 12, 2006, Findings of Facts and Conclusions of Law. Defendant avers that this date represents the final termination of the allegedly wrongful proceedings. Because Plaintiffs did not institute this action until April 15, 2009, more than two years after October 12, 2006, Defendant concludes that the statute of limitation bars this action against Defendant. *See* Def.'s Mot. for Sum. J. at 18-20.

Plaintiffs argue, however, that the date of termination relates to a final appealable order and that the Findings entered on September 12, 2006, were not a final appealable order. *See* Plaintiffs' Resp. to Sum. J. at 18. In support of this argument, Plaintiffs cite Pennsylvania Rule of Appellate Procedure 341(b), which provides that: "a final order is any order that: (1) disposes of all claims and of all parties; or (2) is expressly defined as a final order by statute; or (3) is entered as a final order pursuant to subdivision (c) of this rule." Pa.R.A.P. 341(b). Plaintiffs argue that Judge Abramson's September 12, 2006, Findings did not dispose of all claims of all parties and was not otherwise a final order. Plaintiffs argue that it was not until April 23, 2007, when Judge Abramson entered judgment in favor of the Firm and against Ms. Welker that a final appealable order was entered. In further support of this contention, Plaintiffs point out that the Firm filed an appeal from the order dated April 23, 2007. *See* Plaintiffs' Resp. to Sum. J. at 18.

9

Thus, Plaintiffs argue that allegedly wrongful proceedings terminated on or after April 23, 2007, and their filing on April 15, 2009, is timely.[8]

As noted above, following trial, Judge Abramson issued Findings as to almost all of the claims in the underlying litigation. Def.'s Mot. for Sum. J., Ex. D-29. However, the Findings did not directly address Ms. Welker's WPCL claim against Mr. Mychak, and the claims between the Firm and the Perry's required additional briefing on the costs and attorney's fees incurred. Pltfs' Memo in Opp., Ex. 4. Following resolution of those issues and other post-trial matters, on April 23, 2007, and May 18, 2007, Judge Abramson entered judgment consistent with his Findings. Pltfs' Memo in Opp., Exs. 4, 5. The orders of April 23, 2007, and May 18, 2007, together disposed of all claims and all parties in the underlying litigation, and entry of judgment was an appealable order. The claims between Plaintiffs and Defendant were not appealed. Pltfs' Memo in Opp., Exs. 4, 5.

The Dragonetti Act requires termination of the "proceedings," not merely findings on individual claims. 42 Pa.C.S.A. § 8351(a); *see D'Elia v. Folino*, 933 A.2d 117, 2007 PA Super. 286 (2007). Indeed, "a cause of action for wrongful use of civil proceedings does not accrue until [the] party has defeated *all* attempts of [the] other party to find him liable in the underlying suit, [and] this includes appellate process." *D'Elia v. Folino*, 933 A.2d 117, 122, 2007 PA Super. 286 (2007). Thus, Plaintiffs correctly point to the entry of judgment disposing of the

---

[8] Plaintiffs' brief implies that the instant case would have been timely filed within two years from *the expiration of the appeal period* following the order of April 23, 2007, but Plaintiffs do not provide specifics in that regard. *See* Plaintiffs' Resp. To Sum. J. at 19. Since the instant case was filed within two years from the April 23, 2007, order, an analysis of the term of the appeal period is not necessary. That is, if the order of April 23, 2007, functions as the termination date, Plaintiffs' Dragonetti claims were timely filed regardless of the appeal period that following that order.

claims between Plaintiffs and Defendants, which was an appealable order,[9] as the terminating event with respect to the proceedings between the parties in this case.

Under Pennsylvania law, "an appeal may only be taken from: 1) a final order or one certified by the trial court as final; 2) an interlocutory order as a right; 3) an interlocutory order by permission; or 4) a collateral order." *Mother's Restaurant, Inc. v. Krystkiewicz*, 861 A.2d 327, 331 (Pa.Super. 2004). Here, Judge Abramson's order of April 23, 2007, constitutes a final, appealable order. While Judge Abramson issued certain Findings pertaining to the claims between Plaintiffs and Defendant on September 12, 2006, he did not terminate the proceedings or enter an appealable order on that date. In fact, the underlying litigation continued for several more months with post-trial motions and other matters. It was not until April 23, 2007, that Judge Abramson entered final judgment with respect to the claims between Plaintiffs and Defendant. This is the termination date of the allegedly wrongful proceedings. Therefore, Plaintiffs had until April 23, 2009, to file their Dragonetti claims, and the Complaint filed on April 15, 2009, is not barred by the statute of limitations.

---

[9] Defendant argues that an appealable order is not necessary to initiate a Dragonetti claim and cites to *Daimler Chrysler Corp. v. Askinazi*, 152 F.Supp. 2d 655 (E.D.Pa. 2001). Def.'s Reply at 7-9. However, *Daimler* concerns an *abandoned claim*, which Pennsylvania courts have concluded can support a cause of action for wrongful use of civil proceedings. In *Daimler*, the court found a claim had been abandoned when the plaintiff filed an amended complaint that did not name a party dismissed along with the original complaint. Thus, the court found that the claim had been sufficiently abandoned to be deemed terminated. There is no such abandonment or withdraw of claims in the instant case. Moreover, the court in *Daimler* rejected the argument that Pa.R.App.P. 341 merely defines what constitutes a final order for purposes of appeal, noting that "under ordinary circumstances . . . Pa.R.App.P. 341 necessarily would apply . . ." to the termination analysis for a Dragonetti claim. *Daimler*, 152 F.Supp. 2d at 660.

### B. Questions of Material Fact Preclude Summary Judgment in Favor of Defendant on Plaintiffs' Dragonetti Claims.

The elements of a cause of action under the Dragonetti Act are "the initiation of a lawsuit without probable cause or in a grossly negligent manner and a favorable outcome in that lawsuit." *Ludmer v. Nernberg*, 520 Pa. 218, 222, 553 A.2d 924, 926 (1989); 42 Pa.C.S.A. § 8351(a); *see also* footnote 7, *supra*. The Act specifies that the plaintiff must prove five distinct elements:

> (1) The defendant has procured, initiated or continued the civil proceedings against him.
>
> (2) The proceedings were terminated in his favor.
>
> (3) The defendant did not have probable cause for his action.
>
> (4) The primary purpose for which the proceedings were brought was not that of securing the proper discovery, joinder of parties or adjudication of the claim on which the proceedings were based.
>
> (5) The plaintiff has suffered damages as set forth in section 8353.

42 Pa.C.S.A. § 8354.

Defendant alleges that Plaintiffs have failed to demonstrate all of the elements necessary to sustain their Dragonetti action against Ms. Welker. Defendant concedes only that Ms. Welker initiated and continued civil proceedings against Mr. Mychak and the Firm. Defendant argues that Plaintiffs have failed to prove three of the five elements necessary to sustain their Dragonetti claims. Defendant argues that Plaintiffs cannot establish (1) the proceedings were terminated in their favor, (2) Ms. Welker initiated the litigation without probable cause, and (3) the litigation was intended for an improper purpose. *See* Def.'s Mot. for Sum. J. at 22-39. As to the first issue, Defendant asserts that the underlying litigation did not terminate in favor of Plaintiffs,

since Ms. Welker's claim for injunctive relief was granted and several other claims were resolved or settled during the litigation. As to the second issue, Defendant asserts that Ms. Welker had probable cause, as that term is defined in 42 Pa.C.S.A. § 8352,[10] to prosecute the underlying proceedings, because she had a reasonable belief that she had a valid claim and she relied upon the advice of counsel. As to the third issue, Defendant asserts that the underlying litigation was initiated with proper purpose, including protecting Ms. Welker's interest in the Firm and the interests of her clients, and limiting Ms. Welker's exposure to liability from the Firm's creditors. *See* Def.'s Mot. for Sum. J. at 22-39.

In response, Plaintiffs argue that there are numerous issues of material fact with respect to each of these three issues. *See* Plaintiffs' Memo in Opp. at 17-30. As to the first issue, Plaintiffs argue that none of the proceedings between the parties actually terminated in favor of Ms. Welker and against Plaintiffs, since the requested injunction did not impact Mr. Mychak or the Firm and none of the alleged settlements resulted in termination of a claim in favor of Ms. Welker. As to the second issue, Plaintiffs argue that Ms. Welker could not have reasonably believed she was a partner, since she repeatedly acknowledged she was an "employee" of the Firm and the underlying complaint alleges both a partnership and an employee/employer

---

[10] Section 8352. Existence of Probable Cause.
A person who takes part in the procurement, initiation or continuation of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either
    (1) Reasonably believes that under those facts the claim may be valid under the existing or developing law;
    (2) Believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or
    (3) Believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.
42 Pa.C.S.A. § 8352.

13

relationship with the Firm. Plaintiffs also argue that Ms. Welker could not rely on the advice of counsel if she knowingly provided misinformation or incomplete information and that questions of fact exist regarding information Ms. Welker provided to her attorney. As to the third issue, Plaintiffs argue that Ms. Welker could not have reasonably believed that she was a partner and that she needed to protect her interest and the interests of her clients through litigation. Plaintiffs also argue that Ms. Welker could not have reasonably believed that a lawsuit was necessary to limit her liability from the Firm's creditors. *See* Plaintiffs' Memo in Opp. at 17-30. These issues are examined in turn below.

### 1. Whether the proceedings were terminated in favor of Defendant.

Defendant asserts that the underlying proceedings did not terminate in favor of Mr. Mychak and the Firm, because Ms. Welker achieved favorable settlements and, in effect, obtained an injunction. Plaintiffs respond that none of the alleged settlements amounted to success on Ms. Welker's claims in the underlying litigation. Plaintiffs argue that the injunction settlement did not impact Mr. Mychak or the Firm. Plaintiffs argue that every claim in the underlying litigation was resolved in favor of Mr. Mychak and/or the Firm. Since many of the claims were, in fact, resolved in favor of Mr. Mychak and the Firm,[11] Plaintiffs may be able to demonstrate at trial that they were the victors in the underlying litigation. Therefore, I address the matters settled by agreement of the parties.

In considering "favorable termination," the Pennsylvania Superior Court has found that when litigants jointly agree to end the underlying suit in a non-litigious manner, the liability of

---

[11] Mr. Mychak and the Firm were granted summary judgment or were awarded judgment after trial as to each claim in the underlying complaint, except with respect to Count XIV, which was the claim for injunctive relief, and Counts VI and VII, which were disposed of by entry of a nonsuit. Def.'s Mot. for Sum. J., Ex. D-29.

the underlying defendant is not determined with finality, and, consequently, the defendant may not be able to proceed with a Dragonetti claim. *D'Elia*, 933 A.2d at 122. When considering "whether a withdrawal or abandonment constitutes a favorable, final termination of the case against who the proceedings are brought initially depends on the circumstances under which the proceedings are withdrawn." *D'Elia*, 933 A.2d at 122 (citing *Bannar v. Miller*, 701 A.2d 242, 247 (Pa. Super 1997)).

Here, the parties disagree about the circumstances under which some of the claims were resolved and whether the agreements actually resolved claims in favor of one side or the other. For example, Defendant asserts that Ms. Welker's concerns regarding personal liability for the Firm's debt were addressed by agreement of the parties to have any such debt paid out of the escrow funds; however, it is not clear that any such an agreement regarding escrow funds relates to a win or loss of either party in the underlying litigation. Additionally, Ms. Welker's petition for a preliminary injunction was worked out by an agreement between the parties, which might indicate that Ms. Welker was successful on that claim. However, Plaintiffs assert that the agreement actually had no bearing on Plaintiffs, since only Mr. Geckle's new firm was responsible for the terms of that agreement. Finally, Defendant claims to have successfully settled the WPCL claims. The facts show that Mr. Mychak paid Ms. Welker $20,000.00 in wages at the close of trial; however, the parties disagree about whether that payment represented a successful resolution of Ms. Welker's WPCL claim.

Thus, there are questions of fact concerning the circumstances of the resolution of some of the claims. The parties will be permitted to present evidence as to whether the alleged settlements amounted to success on Ms. Welker's claims in the underlying litigation.

### 2. Whether Ms. Welker initiated the litigation without probable cause.

Probable cause to prosecute the underlying proceedings requires that the plaintiff reasonably believed in the existence of the facts upon which his or her claim is based. *See* 42 Pa.C.S.A. § 8352. Here, Ms. Welker's claims against the Firm and Mr. Mychak in the underlying litigation were based on Ms. Welker's alleged interest in the assets of the Firm as a partner. Thus, the issue is whether or not the facts show that Ms. Welker reasonably believed she was a partner with the Firm.

Defendant claims that Ms. Welker believed she was a partner and, as such, she had an interest in the assets of the Firm and had potential liability related to the activities of the Firm. Def.'s Mot. for Sum. J. at 33-37. Ms. Welker relies upon the fact that she was publically touted as a partner, including recognition at a partnership party, and listing as a partner in insurance documents and written advertisements for the services of the Firm. Def.'s Mot. for Sum. J. at 33-37, Ex. 2 ¶¶ 11-13. Plaintiffs acknowledge that Ms. Welker was publically held out as a partner, but claim that Ms. Welker was actually an employee with no interest or liabilities related to the Firm. Plaintiffs' Memo in Opp. at 5. In support of this contention, Plaintiffs point to the testimony of Mr. Mychak,[12] Mr. Geckle[13] and John L. Leonard,[14] an attorney representing Mr.

---

[12] Mr. Mychak testified that Ms. Welker was publically referred to as "partner" for marketing purposes but that Ms. Welker knew she was merely an employee of the Firm with no responsibility for the liabilities of the Firm. Pltfs' Memo in Opp., Ex. 2.

[13] Mr. Geckle testified that Ms. Welker acknowledged on numerous occasions that she was merely an employee of the Firm with no interest in any of the assets of the Firm. Pltfs' Memo in Opp., Ex. 6. Mr. Geckle testified that Ms. Welker specifically acknowledged that she had no interest in the Firm during the negotiations for the sale of the Firm's assets. Pltfs' Memo in Opp., Ex. 6.

[14] Mr. Leonard testified that he was aware of advertisements listing Ms. Welker as a partner; that he researched the ownership of the Firm and employment status of Ms. Welker and

Mychak in negotiations for the sale of the Firm's assets. Further complicating matters is Ms. Welker's complaint in the underlying litigation, which simultaneously references Ms. Welker as a partner and as an employee. Pltfs' Memo in Opp., Ex. 1, ¶¶ 5, 11. Thus, there is conflicting evidence as to Ms. Welker's status as a partner, which creates a genuine issue of material fact as to whether Ms. Welker reasonably believed she was a partner. Accordingly, I find that there are genuine issues of material fact as to whether Ms. Welker reasonably believed in the existence of facts upon which she based her claims against the Firm and Mr. Mychak; i.e., that Mr. Mychak had made Ms. Welker a partner with an interest in the Firm.

The issues of fact concerning Ms. Welker's status as a partner also impact Defendant's advice of counsel argument. A plaintiff can only rely on the advice of counsel when counsel has been fully informed of all relevant facts concerning the matter. *See* 42 Pa.C.S.A. § 8352 (2). Here, it is not clear what facts Ms. Welker provided to her counsel. The only evidence on this issue is a declaration of Abraham C. Reich, counsel for Ms. Welker during the initial phase of the underlying litigation, and Ms. Welker's deposition testimony. However, Mr. Reich's declaration states only that "based on information given to [him] by Ms. Welker," he believed that Ms. Welker had probable cause to initiate the litigation. Def.'s Mot. for Sum. J., Ex. 22. Ms. Welker's deposition transcript does not conclusively show that Mr. Reich was provided with all of the relevant facts concerning Ms. Welker's status as a partner. Pltfs' Memo in Opp., Ex. 3. Rather, Ms. Welker testified that her counsel formed his opinion based, at least in part, on the information that she provided to him, including her understanding that she was a partner with the

---

determined that Ms. Welker was an employee with no ownership interest; and that he discussed the issue with Ms. Welker and Mr. Geckle at the onset of negotiation and, at that time, everyone explicitly agreed with Mr. Leonard's determination that Ms. Welker had no interest in the Firm and was not a partner. Pltfs' Memo in Opp., Ex. 7.

Firm. Pltfs' Memo in Opp., Ex. 3. There is a question of fact precluding entry of summary judgment on this issue, as there is insufficient evidence upon which to base a finding that Mr. Reich was sufficiently equipped with of the salient facts concerning Ms. Welker's alleged status as a partner.

### 3. Whether the litigation was intended for an improper purpose.

Defendant argues that Ms. Welker's *position as a partner* with the Firm exposed her to potential liability and established her interest in the assets of the Firm. Thus, Defendant argues that the underlying litigation was for a proper purpose; i.e., to protect her interests and limit her future liability. *See* Def.'s Mot. for Sum. J. at 22-39. Plaintiffs argue that Ms. Welker would have no interest or liability associated with the Firm unless she was a partner, which she knew she was not. *See* Plaintiffs' Memo in Opp. at 17-30. Therefore, whether the litigation was intended for a proper purpose hinges on Ms. Welker's alleged belief that she was a partner. As set forth above, there are genuine issue of material fact as to whether Ms. Welker reasonably believed she was a partner.

## V. CONCLUSION

As set forth above, Defendant has failed to establish that the defense of probable cause entitles her to judgment, because there is conflicting evidence on the partnership issue. I also find that the conflicting evidence creates questions of fact regarding whether Ms. Welker initiated the litigation for a proper purpose. Finally, as set forth above, I find that there are questions of fact regarding whether the underlying proceeding terminated in favor of Plaintiffs.

Accordingly, the Court denies the motion for summary judgment. An appropriate Order follows.

BY THE COURT:


 /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE